# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW THOMAS COWHY,

Defendant-Appellant.

UNPUBLISHED
July 31, 2018

No. 334140
St. Clair Circuit Court
LC No. 15-002000-FC

Before: SERVITTO, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

The prosecution alleged that when defendant was between the ages of 14 and 22, he repeatedly sexually abused his young niece, nephews, and cousins while babysitting them. Defendant pleaded guilty to five counts of second-degree criminal sexual conduct (sexual contact by a defendant over the age of 17 and victim under 13), one count of CSC-II (victim under the age of 13), three counts of CSC-III (multiple variables), one count of accosting a child for immoral purposes, and three counts of first-degree child abuse. In exchange for his pleas, the prosecution dismissed several CSC-I charges.

Defendant subsequently, and unsuccessfully, sought to withdraw his plea. He contended that (1) the St. Clair Circuit Court lacked jurisdiction over him as he was a juvenile when most of the offenses occurred, (2) the court failed to establish a factual basis (his age) to support the plea, and (3) his child abuse convictions and sentences violated the Ex Post Facto clauses of the federal and state constitutions as the court relied on a version of the statute that took effect after the offenses were completed, and which substantially increased the permissible sentence. We vacate the court's denial of defendant's plea withdrawal request. Although defendant waived his first two challenges, the record does not contain evidence that he waived his challenge to the Ex Post Facto violation. On remand, defendant must be permitted to withdraw his plea, in its entirety, if he so chooses.

## I. BACKGROUND

In 2015, the prosecutor charged defendant with various crimes for sexually assaulting his young relatives from 2002 through 2011. Defendant pleaded guilty to sexually penetrating and touching five children, as well as forcing them to perform fellatio on him, during that period. Defendant was a minor during many of these acts, turning 18 on December 1, 2005.

-1-

At sentencing, the prosecutor noted that defendant received the benefit of having multiple CSC-I charges dropped, charges that "carr[ied] a 25 year mandatory minimum that was potentially consecutive." As to the first-degree child abuse charges, the prosecutor stated that defendant "waiv[ed] any claim in terms of . . . the time frame" of when the offenses occurred. The prosecutor recited a timeframe of 2002 through 2015. In actuality, defendant had pleaded guilty to offenses only through 2011.

Defense counsel responded:

> Your Honor, I've had an opportunity [to] speak with my client regarding the concerns of the prosecuting attorney's office as it relates to the child abuse, first degree counts. He understands that as part of the plea agreement he is waiving any claim that those charges could not be brought under the facts and circumstances of this case and the time frames that are involved. He [has] acknowledged that to me, and he's ready to acknowledge that to the Court.

Ultimately, the court sentenced defendant to 10 to 15 years' imprisonment for the CSC-II and CSC-III convictions, nearly 19 years to 30 years for the child abuse convictions, and 2 to 4 years for the accosting conviction.

With the assistance of appellate counsel, defendant moved to withdraw his plea. Defendant initially contended that a factual basis was not established at the plea hearing to support his child abuse charges because he was not asked to admit that he "knowingly caused severe physical or mental harm." Defendant further asserted that he was a minor when all the offenses occurred and should have been charged as a juvenile. Defendant attested that he told his attorney that all the offenses were committed before his 16th birthday but that counsel advised him to accept the prosecution's plea deal or face life imprisonment. In a supplemental motion following the court's hearing, defendant conceded that only some of his offenses occurred when he was a minor. Charges related to those acts, defendant contended, should have been raised in the juvenile court and only then could the prosecutor have sought waiver to try defendant as an adult. Defendant also added that the sentences imposed for his child abuse offenses violated the Ex Post Facto clauses of the state and federal constitutions. At the time of his offenses, the maximum penalty for first-degree child abuse was 10 to 15 years. On July 1, 2012, however, the Legislature amended the statute to provide a potential life sentence. The prosecutor improperly relied on the potential life sentence when negotiating the plea agreement, defendant asserted.

The trial court denied defendant's motion to withdraw his plea. In relation to the factual predicate for the child abuse charges, the court noted that defendant admitted facts sufficient to support CSC-I convictions and these facts were used to support the substituted charges of child abuse and CSC-III.

The court restructured defendant's challenge that he should have been charged as a juvenile. The court rephrased it as a challenge to counsel's performance for failing to notify defendant that a juvenile offender cannot be sentenced to a mandatory life term. The court first noted that an adult offender could have received a life sentence for a CSC-I conviction, and defendant could have faced three consecutive 25-year maximum sentences. Even if defendant

had been a juvenile at the time of his offenses, the court continued, "he still could have been automatically waived up to circuit court and charged as an adult." Even if the case remained in family court, a juvenile offender faced the same statutory sentence as an adult.

The court rejected defendant's Ex Post Facto challenge, ignoring that the court itself stated on the record at the plea proceeding that the offenses occurred between 2002 and 2011 and relying instead on the information, which indicated that the offenses continued until 2015. Relying on the 2012 statutory amendments, therefore, was not unconstitutional in the court's estimation. In any event, the court opined that defendant had waived this challenge by failing to object when the prosecutor "reiterated that pursuant to the plea agreement Defendant was waiving any claims in terms of the time frame as it related to" the child abuse counts. The court summarized:

> The fact remains that by pleading down to the Child Abuse, First Degree, counts in exchange for the dismissal of the [CSC-I] counts, Defendant received the benefit of removing the mandatory 25 year minimum and possibility of consecutive sentencing. Defendant has failed to show a "miscarriage of justice," and there is nothing about the proceedings themselves that raise a question about the validity of the plea.

This appeal is now before us on leave from the Supreme Court as on delayed leave granted.

## II. STANDARD OF REVIEW

"We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). A defendant's ability to withdraw a plea after the trial court has accepted it is limited. *Blanton*, 317 Mich App at 118. If raised within six months of sentencing, the plea may be set aside for "error[s] in the plea proceeding." MCR 6.310(C)(4). Stated differently, the defendant "must demonstrate a defect in the plea-taking process" to support his motion to withdraw. *People v Brown*, 492 Mich 684, 693; 822 NW2d 208 (2012).

## III. JUVENILE STATUS

Defendant continues to challenge the prosecutor's failure to first bring the charges against him as a juvenile and cites this as a ground to withdraw his plea.

We assume for purposes of this appeal that failing to charge a minor as a juvenile would be a defect in the plea-taking process. However, defendant waived any challenge to this defect. "A circuit court's authority to exercise jurisdiction over a defendant charged with a felony committed as a minor constitutes a question of personal, not subject matter, jurisdiction." *People v Kiyoshk*, 493 Mich 923, 923; 825 NW2d 56 (2013). " '[A] party may stipulate to, waive, or implicitly consent to personal jurisdiction.' " *Id*. at 924, quoting *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) (alteration in original). As in *Kiyoshk*, by pleading guilty in the circuit court, and failing to contemporaneously contest the circuit court's personal jurisdiction, the

current defendant "implicitly consented to that court's exercise of personal jurisdiction." *Id*. Defendant's waiver extinguished any error in this regard, leaving nothing more for this Court to review. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

However, defendant also challenges his trial counsel's performance in waiving this challenge. To warrant relief based on the ineffective assistance of counsel, a criminal defendant must establish prejudice, i.e., a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Solomonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Defendant has not demonstrated the necessary prejudice here.

When entering his plea, defendant admitted a time line for his offenses. By his own admission, defendant committed only a portion of his offenses as a minor. Any acts committed after December 1, 2005, were properly raised in the adult justice system in the first instance. MCL 712A.2(a)(1)(A) provides for automatic waiver of juvenile court jurisdiction for offenders over the age of 14 who have committed CSC-I in violation of MCL 750.520b. The prosecutor initially charged defendant with several counts of CSC-I. When pleading to the factual basis for his convictions of lesser offenses, defendant admitted acts amounting to CSC-I. Accordingly, juvenile court jurisdiction would have been automatically waived.

Further, MCL 712A.18(m) permits the court to impose an adult sentence on a juvenile offender:

> If the court entered a judgment of conviction under [MCL 712A.2d], enter any disposition under this section or, *if the court determines that the best interests of the public would be served, impose any sentence upon the juvenile that could be imposed upon an adult* convicted of the offense for which the juvenile was convicted. [Emphasis added.]

Charging defendant with juvenile offenses would not have impacted the probable sentences cited when negotiating the plea agreement; defense counsel would still have been required to advise defendant of the potential sentences he would face if the court deemed in the public's best interests to impose adult sentences. Accordingly, defendant cannot establish the requisite prejudice to warrant new proceedings on this ground.

## IV. FACTUAL BASIS

Defendant contends that the trial court should have allowed him to withdraw his plea because there was no factual basis for his plea to the CSC-II and first-degree child abuse charges. Specifically, defendant notes that he was a juvenile when these offenses were committed and claims that the court therefore lacked jurisdiction to accept his plea. Again, the conceded facts do not support that all of defendant's offenses were committed when he was a juvenile. And again, defendant waived any error in this regard by pleading guilty in the circuit court.

## V. EX POST FACTO

Finally, defendant contends that he should have been permitted to withdraw his plea because he was misinformed of the maximum possible sentence for his first-degree child abuse convictions at the time he committed his offenses.

MCL 750.136b was amended effective July 1, 2012, to provide a punishment of "life or any term of years" for a first-degree child abuse conviction. MCL 750.136b(2). However, defendant pleaded guilty to offenses arising between 2002 and 2011. At that time, MCL 750.136b(2) provided a term of imprisonment for a first-degree child abuse conviction of "not more than 15 years." MCL 750.136b(2), as amended by 1999 PA 273. Defendant asserts that during the plea negotiations, his attorney advised him that he faced a potential life sentence for these offenses. He further states that the prosecutor and defense counsel improperly relied on the life sentence provision when negotiating the terms of the plea agreement. This violated the Ex Post Facto clauses of the federal and state constitutions, defendant argues. See US Const, art I, § 10; Const 1963, art 1, § 10.

Relevant to this appeal, the Ex Post Facto clauses of the federal and state constitutions "bar the retroactive application of a law if the law . . . increases the punishment for a crime." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014). Defendant's sentences in this case were clearly barred under this constitutional rule. Defendant was sentenced to a minimum term of 18 years and 9 months for his child abuse convictions, almost four years longer than the maximum possible penalty under the statute as it existed at the time of his offenses.

The prosecutor insists, however, that defendant was aware of the situation and waived any potential error. According to the prosecutor, her predecessor agreed during plea negotiations to dismiss three charges of CSC-I and instead charge defendant with CSC-III and first-degree child abuse. The minimum term of imprisonment for the CSC-I charges was 25 years, and the court could order those sentences to run consecutively. See MCL 750.520b(2)(b), (3). The parties recognized during the negotiations that the maximum penalty for the reduced child abuse charge was only 15 years prior to 2012, the prosecutor asserts, and agreed to compromise in the interests of justice. This resulted in an agreement to proceed under the current version of the child abuse statute even though it did not truly apply.

We granted the prosecutor's motion to supplement the record with affidavits from the prosecutor and defense counsel who served during trial. The trial prosecutor supports this version of events. Defendant's trial counsel states essentially the same regarding his plea advice to his client. However, defense counsel fell into the same error as the trial court—believing that defendant was pleading guilty to offenses that occurred both before and after the statutory amendment. Accordingly, he advised his client that he "would be sentenced under the statute as amended, even though some of his sexual assaults were committed prior to the amendment of the statute."

The prosecutor continues that defendant's agreement to this compromise, and waiver of any Ex Post Facto challenge, is evidenced by statements at sentencing. The prosecutor informed the court at sentencing:

> As it relates to the plea agreement in this case, as the Court notes, the benefit to
> the Defendant was the dismissal of the [CSC-I] counts that did carry a 25 year

mandatory minimum that was potentially consecutive. The Defendant is waiving any claim in terms of, particularly the time frame as it relates to the child abuse, first degree counts, that are currently charged in it and were plead [sic] to.

The prosecutor then read from the information, instead of the facts as pleaded by defendant, and cited a time frame for defendant's offenses of 2002 through 2015, instead of 2011. The prosecutor concluded, "So there will not be any claim in the future regarding a challenge as to the application of the A Grid to that child abuse, first degree to those counts." Defense counsel responded to the prosecutor's statements at sentencing by noting that defendant "understands that as part of the plea agreement he is waiving any claim that those charges could not be brought under the facts and circumstances of this case and the time frames that are involved."

A defendant may waive his constitutional rights. *People v Gonzalez-Raymundo*, 308 Mich App 175, 187; 862 NW2d 657 (2014), citing *People v Carter*, 462 Mich 206, 217-218; 612 NW2d 144 (2000). "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks and citation omitted). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id*.

In whatever manner a right is waived, however, this Court must be able to determine from the lower court record what that right is. Indeed, "[c]ourts must 'indulge every reasonable presumption against the loss of constitutional rights' in assessing a waiver of such rights." *Gonzalez-Raymundo*, 308 Mich App at 187-188, quoting *Illinois v Allen*, 397 US 337, 343; 90 S Ct 1057; 25 L Ed 2d 353 (1970). The presumption against waiver is naturally invoked when a waiver is unclear and vague. And here, we do not see the statements of the prosecutor and defense counsel as a waiver by defendant of the current Ex Post Facto violation.

Neither the prosecutor nor defense counsel mentioned on the record that MCL 750.136b(2) had been amended to increase the penalty for first-degree child abuse. At the plea proceeding, the prosecutor described first-degree child abuse as a "life offense[]," which is true only under the current version of the statute. No one advised defendant on the record that at the time he committed his offenses the maximum sentence was only 15 years. The prosecutor stated that the parties had agreed to a sentence for the child abuse convictions no "lower than 15 years," but again did not explain that this was the result of a compromise to rely on the current, rather than applicable, version of the statute. Defendant acknowledged the accuracy of the statements made on the record regarding the plea agreement and at the end of the hearing, the parties agreed that they had "placed on the record the entire plea agreement, there is nothing beyond what's been stated[.]" And even according to defense counsel's own affidavit, it appears that defendant believed he could legally be sentenced under the amended statute's life sentence provision based on the erroneous advice that he committed certain of his sexual offenses after the statute's amendment.

Again at sentencing, the Ex Post Facto clauses of the state and federal constitutions were not mentioned. No one acknowledged that defendant's acts amounting to first-degree child abuse were committed in 2011, when the maximum sentence was only 15 years. The prosecutor

indicated that defendant would not challenge "the application of the A Grid to" the child abuse convictions. First-degree child abuse in violation of MCL 750.136b(2) is currently a Class A offense against a person with a statutory maximum of life imprisonment. MCL 777.16g. However, MCL 777.16g, as amended by 2008 PA 521, provided that such a violation was a Class B offense with a statutory maximum of 15 years. There was no record mention of this fact.

Defendant did indicate that he was "waiving any claim in terms of, particularly the time frame as it relates to the child abuse, first[-]degree counts, that are currently charged in it and were plead [sic] to." Although the prosecutor cites this as a waiver of the Ex Post Facto challenge, the waiver of any claim related to "the time frame" could just as easily be a waiver of defendant's right to be charged as a juvenile. There simply is no way to ascertain on this record what rights defendant actually waived.

## VI. RELIEF

As it is not clear on this record that defendant waived his right to challenge the Ex Post Facto violation, defendant is entitled to withdraw his guilty plea on that ground. Although the violation relates only to the sentences for defendant's first-degree child abuse convictions, defendant must be permitted to withdraw his plea in its entirety.

As described by this Court in *Blanton*, 317 Mich App at 125, "during the plea bargaining process . . . both parties often tend to negotiate a 'package deal.' " In *Blanton*, 317 Mich App at 126, for example, the prosecution charged the defendant "with multiple offenses in a single information" and the defendant negotiated for the dismissal of certain charges and a habitual offender enhancement in exchange for his guilty plea to three counts. By the prosecutor's own admissions, the same type of negotiation occurred here. In exchange for the prosecution's dismissal of the most serious charges against defendant, he agreed to plead guilty to lesser CSC counts and first-degree child abuse. The charges to which defendant pleaded were interconnected to reach sentences that were seemingly acceptable to all. To remedy the defect in the plea-taking process, defendant must be allowed to withdraw his entire plea, to disavow the entire plea package.

Accordingly, we vacate the denial of defendant's motion to withdraw his plea and remand to allow defendant to withdraw his plea if he so chooses. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens

-7-